Charles Solomon, M.
This is a prosecution for Sabbath
breaking (Penal Law, art. 192). Specifically, the defendant is charged with the violation of section 2143 of the Penal Law, which reads: “ Labor prohibited on Sunday. All labor on Sunday is prohibited, excepting the works of necessity and charity. In works of necessity or charity is included whatever is needful during the day for the good order, health or comfort of the community.”
The pertinent issue, under the unusual circumstances of this case, is the proper connotation to be given the term “ labor ” within the meaning of the statute.
The facts of this case do not come within the ambit of the usual. Ordinarily, the defendant in this type of prosecution is a small neighborhood merchant charged with the unlawful sale on Sunday of some commonplace commodity. On the other hand, the alleged violation of law, here considered, occurred in the heart of the New York City financial district in the forenoon of January 15, 1956, on the seventh floor of an office building located at 40 Wall Street. Two policemen (a patrolman and a sergeant) ascended by elevator to the seventh floor and entered a private office. Therein were men apparently engaged in operating typewriters and adding machines and making entries in what appeared to be books. The record is silent as to what entries, if any, were being made; what, if anything, was being typed; what, if anything, was being computed on the adding machines. Upon inquiry, the defendant appeared and identified himself as “ the managing senior ” of an accounting firm of which those present, he said, were employees engaged in making an audit. There was no disturbance of any kind in or *203 outside the building. It was disclosed, although no proof on the question was elicited, that the police were directed to the scene by a disgruntled individual with a personal axe to grind. If need be, the court could take judicial notice of the fact that the vicinity in question is virtually deserted on Sundays. Therefore, insofar as the Sabbath Law (§ 2140) interdicts “ serious interruptions of the repose and religious liberty of the community ”, a violation could hardly have occurred.
The body of the complaint recites: ‘ ‘ That in violation of section 2143 of the Penal Law, on Sunday, January 15, 1956, at 10:45 a. m., at No. 40 Wall Street, in the County of New York, City and State of New York, the defendant Sol Sacks did, being in charge and control of 25 male adult persons, allow and permit and cause these persons to be employed and to labor on a Sunday as auditors and accountants, such labor not being a work of necessity and charity and not needed during this day for the good order, health or comfort of the community.”
There is no evidence to indicate that the defendant did “ allow ”, “ permit,” and “ cause ” any proscribed labor as otherwise charged in the complaint. Apparently, he was just another employee. However, it is not the purpose of this court to address itself to this aspect of the case, but to proceed immediately to the basic legal proposition involved herein, to wit, whether the acts here charged constituted “ labor ” within the purview of the statute.
Diligent research for cases bearing upon the problem reveals no precedents directly in point in this State, although judicial authority is disclosed which sustains the rationale upon which the determination of this court will be predicated.
At the outset it may be borne in mind, as stated in Corpus Juris Secundum (Vol. 51, Labor or Labour, p. 472), that: “ The precise line between what is commonly called ‘ labor ’ and other employment cannot be drawn with absolute accuracy. However, with but few exceptions, it is generally conceded that the activities of individuals whose principal efforts are directed to the accomplishment of some mental task are not in accord with the popular, everyday notion of what constitutes ‘ labor.’ ”
Again, in Corpus Juris (Vol. 35, Laborer or Labourer, p. 929), it is said that “ the term ‘ laborer ’ has been held not to include an agent who sells goods by sample, an architect, a bookkeeper, a bookkeeper and auditor, a bookkeeper and general manager, a civil engineer, a clerk, ” etc.
This general line of demarcation is indicated in the following: Corpus Juris Secundum (Vol. 51, Laborer or Labourer, p. 476) *204 under the caption “ Popular, Restricted, or Lexical Meaning ”, and at page 475 of the same volume, under the caption, “ In General ” under “ Laborer or Labourer ”, See, also, American and English Encyclopedia of Law (2d ed., Vol. 18, p. 71). At page 73 of that volume will be found case citations in which the following were held not to be laborers: Clerks, auditors, bookkeepers and a general manager. To the same effect see also the following cases: Universal Pictures Corp. v. Superior Court of Los Angeles County (9 Cal. App. 2d 490); Oliver v. Macon Hardware Co. (98 Ga. 249); Buchanan v. Echols (8 Ga. App. 565); Russell Flour & Feed Co. v. Walker (148 Okla. 164), and Indianapolis Northern Traction Co. v. Brennan (174 Ind. 1).
It may be mentioned that the lexicographers tend to support the construction of the term “ labor ” as the court shall apply the same to the circumstances of this case. (See Webster’s New International Dictionary [2d ed.]; Funk & Wagnalls New Standard Dictionary of the English Language; Webster’s Collegiate Dictionary [5th ed.], and others; see, also, 24 Words and Phrases [permanent ed.], p. 7 et seq., and cases there cited.)
In Universal Pictures Corp. v. Superior Court of Los Angeles County (supra) the court construed the term “ labor ” as referring to those who perform physical or manual services, as distinguished from professional men and women who depend primarily upon the exercise of their mental faculties to accomplish a given result. The court said, in effect, that except when clearly otherwise indicated or intended, the words in a statute should be given their ordinary meaning and receive a sensible construction in accord with the common understanding of men. The court (p. 493) recognized the “ confusion ” in the decisions of the different jurisdictions with “ reference to a settlement of the precise question ” of the issue here under consideration and stated: “ However, with but few exceptions, it seems to be generally conceded that individuals whose principal efforts are directed to the accomplishment of some mental task, such as those of ministers of the gospel * * * [citing cases]; or those persons generally known and recognized as professional men or women, even though in its broad sense perform ‘ labor ’, are not to be, nor should be, classified as ‘ laborers ’. That such a conclusion is in accord with the popular, every-day notion of what constitutes ‘ labor ’ is so well recognized and attested as a fact that its existence needs no illustration ’’.
In Wakefield v. Fargo (90 N. Y. 213, 217), the court concluded that a person acting as a bookkeeper and general manager was not a ‘‘ laborer, servant, or apprentice. ’’ Likewise, in Jorgensen *205 v. Mickle (259 Mich. 571), it was unanimously held that services performed by an office boy, including stenographic work and bookkeeping, did not constitute ‘‘ labor ’’ within the statute there considered. It is significant that in Fox Amusement Co. v. McClellan (62 Misc. 100,105), the court points out: “ The Legislature did not see fit to prohibit, generally, all secular business and employment, but only those defined and specified. A statute making criminal an act otherwise lawful should not be strained beyond its plain import to enlarge the field of crime. * * * and each case must be decided on its peculiar facts as to whether the act is labor and whether it is such as is prohibited. Not every act in pursuance of a vocation is prohibited labor, and Sunday labor is not forbidden those who keep another day holy.” Again, in McCormick v. Hazard (77 Misc. 190), the Appellate Term of the First Department, by Mr. Justice Seabury, states, at p. 192: ‘‘ The Sunday laws are to be liberally construed, and acts done on that day, which do not disturb or interfere with others, and are not contrary to the design sought to be accomplished by such laws, are not illegal.”
In the leading case of People v. Dunford (207 N. Y. 17), the defendant was charged with a violation of section 2147 of the Penal Law which prohibits, with certain exceptions, “ All manner of public selling or offering for sale of any property ” on Sunday. The defendant was convicted for offering certain real estate for sale on Sunday. The transaction occurred in a moving train and was between the defendant and a police officer. In reversing the conviction and discharging the defendant, it was stated, at page 21: “ The scheme of the Penal Law is to prohibit the doing of certain acts specified on the first day of the week, because constituting ‘ serious interruptions of the repose and religious liberty of the community ’ and, therefore, a ‘ Sabbath breaking.’ (Sections 2140, 2141.) * * * It seems to be intended by this legislation to declare that act a nuisance, which disturbs the public rest on Sunday, or tends to profane the day by any unnecessary, or noisy, conduct. ’’
“ Does a proper construction of the language of section 2147 comprehend the act, with which-the defendant was charged?” asked the court at page 20 {supra). “ Did that constitute ‘ public traffic ’ and do the words ‘ any property ’ refer to real estate, as well as to commodities, or articles of personal property? Nothing in the reading of the section would suggest to the ordinary mind that the ‘ public traffic ’ to be prohibited related to an effort to sell real estate, such as the defendant was proved to have made.” (People v. Dunford, 207 N. Y. 17, 20.)
*206 Essentially, the identical question may very well be propounded here. Does a proper construction of the language of section 2143 comprehend the act with which this defendant is charged? Did his presence, and activity, if any, and that of the others, in the seventh floor office of 40 Wall Street, on the Sunday morning in question, constitute the “ labor ” prohibited by the statute? It seems to this court that nothing in the construction of the section would suggest such a conclusion to an ordinary mind.
In the brief filed by defendant’s counsel in this matter it is urged: ‘‘ Libraries, public and private, are kept open on Sundays, not only for general use by the community, but also to afford opportunity for research and study and in connection with which clerks and stenographers are utilized. What lawyer or Judge, for that matter, does not have occasion from time to time to utilize his offices or Chambers on Sundays for the preparation of briefs, opinions and other problems affecting the practice of the profession and in connection with which clerical services are utilized on that day? It is our position that the work complained of does not fall within any of the prohibitions enumerated in the applicable sections of the Penal Law.”
The court deems the argument thus posed as cogent, persuasive and not inconsistent with judicial authority. If the Legislature had intended to ban clerical work, such as is alleged to have been in progress on the occasion here involved, it could easily have done so. Indeed, there seems to have been no reluctance upon the part of the Legislature from time to time to amend the Sabbath Law. In fact, the numerous amendments over the years have resulted in a statutory pattern which has been likened repeatedly to a “ crazy quilt.”
For the reasons set forth in the foregoing, it cannot reasonably be said that the alleged clerical work, as testified to be the witnesses on behalf of the People, is condemned by necessary implication. Logic and authority are heavily to the contrary. As was said by the Court of Appeals in People v. Shifrin (301 N. Y. 445, 447): “ ‘ Acts otherwise innocent and lawful, do not become crimes, unless there is a clear and positive expression of the legislative intent to make them criminal. The citizen is entitled to an unequivocal warning before conduct on his part, which is not malum in se, can be made the occasion of a deprivation of his liberty or property.’ * * * [citing cases] ”.
In that holding there is an implicit reminder of a basic principle of constitutional liberty which should not be overlooked.
*207 The permissible and the impermissible in the Sabbath Law seem to defy logic and consistency. (Church, State and Freedom, by Leo Pfeffer, Beacon Press, at pp. 232-233.) In his annual message to the joint session of the New York State Legislature on January 9, 1952 (N. Y. Legis. Doc., 1952, No. 1, p. 26), Governor Thomas E. Dewey urged “ a careful re-examination ” of the Sabbath Law, “ so that the more serious inconsistencies can be removed * * * immediately.” He informed the Legislature: “ The Penal Law provisions on Sabbath observance date back many years. The original broad prohibitions have been whittled away through the years by numerous exceptions and the present provisions create an illogical and inconsistent pattern. * * * There are many * * * incongruities and examples of disparate treatment. Many activities which do not interfere with the religious repose of the community are prohibited by existing law.”
At the close of the People’s case, defense counsel moved to dismiss upon the ground that the People had failed to establish any violation of law as charged. I am satisfied, under the circumstances here disclosed, that no violation of the statute occurred and, in consequence, the defendant’s motion to dismiss is granted.