Samuel J. Sel.yer.mau, J.
These consolidated actions seek a declaratory judgment that Local Law No. 14 of the City of New York for the year 1961 is invalid and unconstitutional, and an injunction against the enforcement of the local law.
Local Law No. 14 amends the Administrative Code of the City of New York so as to include automatic and coin-operated laundry operations within the previous licensing statute, and to make certain regulations with respect thereto. The local law amends section B32-167.0 of the Administrative Code so as to include in the definition of the word ‘ ‘ laundry ”: “ 4. Any place, whether self service or otherwise maintained for the general public for the purpose of washing clothing apparel, or other fabrics, whether by automatic or coin operated laundry machinery.”
The local law further provides in section B32-173.0: “ f. All laundry operations, whether automatic or coin operated, whether attended or unattended, shall close all day Sunday and between the hours of 12:00 midnight to 6:00 a.m. on all other days.
“ g. All coin operated laundries shall be required to have on the premises an attendant from 6:00 p.m. until closing.”
*305 Plaintiffs, owners of unattended coin-operated laundries, known as laundromats or launderettes, contend that the statute is invalid and discriminatory as to them.
The underlying grants of legislative power to the city so far as here relevant, are:
State Constitution (art. IX, § 12): “ Every city shall have power to adopt and amend local laws not inconsistent with the constitution and laws of the state relating to its property, affairs or government. Every city shall also have the power to adopt and amend local laws not inconsistent with this constitution and laws of the state, and whether or not such local laws relate to its property, affairs or government, in respect to the following subjects: * * * the government and regulation of the con-
duct of its inhabitants and the protection of their property, safety and health.”
General City Law (art. 2-A, § 20): “ Subject to the constitution and general laws of this state, every city is empowered: # * #
“ 13. To maintain order, enforce the laws, protect property and preserve and care for the safety, health, comfort and general welfare of the inhabitants of the city and visitors thereto; and for any of said purposes to regulate and license occupations and businesses. ’ ’
New York City Charter (§ 27): “ a. * * * The council in addition to all enumerated powers shall have power to adopt local laws as to it may seem meet, which are not inconsistent with the provisions of this charter or with the constitution or laws of the United States or of this state, for the good rule and government of the city; for the order, protection and government of persons and property; for the preservation of the public health, comfort, peace and prosperity of the city and its inhabitants; and to effectuate the purposes and provisions of this charter or of the other laws relating to the city. The council shall have power to provide for the enforcement of local laws by legal or equitable proceedings, to prescribe that violations thereof shall constitute misdemeanors, offenses or infractions and to provide for the punishment of violations thereof by civil penalty, fine, forfeiture or imprisonment, or by two or more of such punishments. ’ ’
On its face, Local Law No. 14 appears not to exceed the limits of the grant of legislative power to the city.
The power of the city to enact local laws is, of course, also subject to (a) the same kinds of constitutional limitations, e.g., due process, as applies to State statutes and (b) additional limitations peculiar to municipal legislation, of which two of *306 the more important are that they shall be “ not inconsistent with this constitution and laws of the state ” (1ST. Y. Const., art. IX, § 12) and that they shall not relate to “ affairs exclusively those of the State ” (cf. Adler v. Deegan, 251 N. Y. 467, 489 [1929]).
On a motion for a temporary injunction, Mr. Justice Gold of this court held the statute valid except as to the Sunday closing provision, held that provision invalid, and enjoined the enforcement of the Sunday closing provision (Schacht v. City of New York, 30 Misc 2d 77 [1961]). The order that was entered contained a decretal paragraph which amounted to a final determination that the Sunday closing provision was invalid. The Appellate Division, on appeal from the temporary injunction order, modified the order so as to strike out this decretal paragraph and, as so modified, affirmed the order including the temporary injunction provision, stating: “The deleted paragraph is, in effect, a final determination that can be properly made only after trial or on a motion for judgment on the pleadings or for summary judgment, and not within the scope of the relief sought on this application.” (Schacht v. City of New York, 14 A D 2d 526 [1st Dept., 1961].)
Thereafter, the matter was tried before me.
The opinion of Mr. Justice Gold disposes of a number of issues, including the arguments that the appropriate legislative procedures were not followed in connection with the local law, and that the city has no power to license automatic laundries. In general, I agree with Mr. Justice Gold’s decision and disposition of the questions raised, and see no need to repeat his discussion.
The basic issue is the validity of the local law under the due process clauses of the State and Federal Constitutions, the home rule provisions of the State Constitution, and the City Home Rule Law.
Despite earlier doctrine to the contrary, it now seems to be established that the due process clause of the Federal Constitution does not prevent a State from prohibiting a business, even though it is a “ legitimate ’ ’ business, 1‘ useful ’ ’, and not 1 ‘ inherently immoral or dangerous to public welfare ’ ’ (Ferguson v. Skrupa, 372 U. S. 726, 728, 731 [1963]). And for this purpose, it does not matter whether the law be called “ prohibitory ” or “ regulatory ” (ibid., p. 732).
We may also assume that the doctrine of Matter of Stubbe v. Adamson (220 N. Y. 459, 463 [1917]), with respect to the greater scope of judicial review of a municipal ordinance as compared to a State statute, applies to local laws passed under the home *307 rule provision of the State Constitution (see Cowan v. City of Buffalo, 247 App. Div. 591, 594 [4th Dept., 1936]).
With respect to municipal regulations, the test of validity remains whether ‘6 it is so lacking in reason for its promulgation that it is essentially arbitrary ” (Matter of Stracquadanio v. Department of Health, 285 N. Y. 93, 97 [1941]), “ whether there was a reasonable basis” (ibid., p. 97), whether there is a “ rational basis ” for the regulation (ibid., p. 101). “ The judicial function is exhausted with the discovery that the relation between the means and end is not wholly vain and fanciful, an illusory pretense ” (Williams v. Mayor of Baltimore, 289 U. S. 36, 42 [1933], quoted in Chiropractic Assn. of N. Y. v. Hilleboe, 12 N Y 2d 109, 114 [1962]).
Under these broad rubrics, some municipal legislation regulating hours has been held invalid, e.g., Cowan v. City of Buffalo (247 App. Div. 591 [4th Dept., 1936]) (Buffalo ordinance forbidding open-air fruit and vegetable stands to be open on Sunday or weekdays from 7 -.00 p.m. to 5 -.00 a.m. held invalid, the court saying however [p. 596]: “ We do not pretend to say that the city cannot legally close markets of this character during some part of each twenty-four hours”); People ex rel. Pinello v. Leadbitter (194 Misc. 481 [1948], affd. 275 App. Div. 864 [1949], affd. 301 N. Y. 695 [1950]) (Poughkeepsie ordinance forbidding barbers to be open earlier than 8:30 a.m. or later than 6:30 p.m. held invalid). And in Trio Distr. Corp. v. City of Albany (2 N Y 2d 690 [1957]) the Court of Appeals declared invalid an Albany ordinance requiring open-air vending vehicles to have an attendant to protect and warn children against street traffic hazards.
On the other hand, in Barbier v. Connolly (113 U. S. 27 [1885]) and Soon Hing v. Crowley (113 U. S. 703 [1885]) the United States Supreme Court sustained the validity of a San Francisco ordinance prohibiting washing and ironing in public laundries and washhouses from 10:0Q p.m. to 6:00 a.m.
Ultimately each case rests on its own facts and precedents from even superficially analogous cases are not too much help.
However, with no exact test available, it does seem that the present-day tendency is for the courts to be less and less restrictive in interpreting the limits of either the State’s or the city’s legislative powers.
Applying these tests, vague as they are, to the local law before us, plaintiffs argue that there is no rational basis for either the limitation on the days and hours when laundries — attended or unattended — may be open for business, or the requirement that *308 during the evening hours of 6:00 p.m. to midnight, laundromats shall have an attendant present.
The statistical evidence presented in court — and so far as appears this is all the statistical evidence there is — does not show any significant difference between attended and unattended laundromats as to frequency of either criminal incidents or accidents or other undesirable events, or indeed between laundromats and other retail establishments. There are obviously some questions as to the reliability of the statistical evidence, e.g., whether as suggested by the city the accident is less likely to be reported if there is no attendant present, or whether the police keep an unattended laundromat under closer observation than an attended one, thus reducing the frequency of criminal incidents at the cost of increased police supervision.
In any event, the Police Commissioner, the Fire Commissioner, and the License Commissioner, favored this legislation.
On June 9, I960, referring to an earlier version of the present bill which would have required laundromats to be licensed and required a person in attendance from 5:00 p.m. to closing, the Police Commissioner said: “At present, there are a large number of unattended laundromats in the city requiring additional attention by the police. These places afford an opportunity for persons to congregate in the late hours of the night for unlawful purposes. They present a safety hazard to women and children.
“ This measure would enure to the benefit of the general public and reduce the need for additional supervision by the police.
‘ ‘ For the above reasons, this Department recommends the enactment of this proposal. ’ ’
In making this recommendation the Police Commissioner was repeating a recommendation that he had made on August 28, 1959, with respect to an earlier bill.
The Fire Department, on October 7, 1959, approved the earlier bill which would have required at least one person in attendance during the operation of laundromats, saying: ‘ ‘ This department approves the proposed change. The requirement that at least one person be in attendance during operations is a sound one.
‘1 It has been brought to our attention that there are a number of laundromats which do not have any persons in attendance with the result that the customers have overloaded the machines. This causes short circuits which have resulted in fires necessitating the calling out of fire appartaus for fire extinguishment. ’ ’
*309 The Commissioner of Licenses took the position that automatic laundries “ should be required to be attended at all times when in operation ’ ’.
Neither the Police Commissioner, the Fire Commissioner, nor the Commissioner of Licenses took any position as to the Sunday closing provision.
After the enactment of Local Law No. 14 a differential was made in fire insurance rates between attended and unattended laundries and dry-cleaning establishments, the unattended being required to pay a somewhat higher rate.
The Police Department has found the incidence of crime generally to be greatest between the hours of 6:00 p.m. and 2:00 a.m.
It is surely a proper municipal function to take reasonable steps toward the control and reduction of crime, particularly during those hours.
This court is unable to say that the city legislative authorities are wholly unreasonable to the point of irrationality in believing that the police and fire problems will be somewhat alleviated by not permitting laundromats — particularly unattended laundromats, though the statute is not so limited — to be open between midnight and 6:00 a.m., and by requiring that between 6:00 p.m. and midnight laundromats have someone in attendance.
Even if the municipal legislative authorities are mistaken in this view, that does not invalidate the legislation. Courts do not sit as an additional house of either State or municipal Legislature. Thus with respect to legislation based on particular scientific beliefs, the Court of Appeals has said (Matter of Viemeister (179 N. Y. 235, 241 [1904]): ‘1 While we do not decide and cannot decide that vaccination is a preventive of smallpox, we take judicial notice of the fact that this is the common belief of the people of the state, and with this fact as a foundation, we hold that the statute in question is a health law, enacted in a reasonable and proper exercise of the police power.”
In Chiropractic Assn. of N. Y. v. Hilleboe (12 N Y 2d 109, 114 [1962]) the Court of Appeals said: “ It is not for the courts to determine which scientific view is correct in ruling upon whether the police power has been properly exercised.”
Again, with respect to the likelihood of accidents as a basis for exercise of the police power, the Court of Appeals said in City of Rochester v. West (164 N. Y. 510, 514 [1900]): “ The fact that no injury has occurred by reason of the erection of the billboard in question, or that it is improbable that any such injury will occur therefrom, is not controlling upon the question *310 under consideration. The validity of a statute is not to be determined by what has been done in any particular instance, but by what may be done under it. (Stuart v. Palmer, 74 N. Y. 183; Gilman v. Tucker, 128 N. Y. 190, 200.) It is equally true that the validity of a statute or ordinance is not to be determined from its effect in a particular ease, but upon its general purpose and its efficiency to effect that end. When a statute is obviously intended to provide for the safety of a community, and an ordinance under it is reasonable and in compliance with its purpose, both the statute and the ordinance are lawful, and must be sustained.”
In I. L. F. Y. Co. v. City Rent & Rehabilitation Administration (11 N Y 2d 480, 489 [1962]) the court said: “ Clearly, the City Council had the right to entertain at least a 1 well-founded fear of future trouble ’, and this, as we stated in the first I. L. F. Y. Co. case, is a sufficient£ predicate for police power law-making ’ (10 N Y 2d 263, 270).”
As Chief Justice Hughes put it in Sproles v. Binford (286 U. S. 374, 388-389 [1932]): “ When the subject lies within the police power of the State, debatable questions as to reasonableness are not for the courts but for the legislature, which is entitled to form its own judgment, and its action within its range of discretion cannot be set aside because compliance is burdensome. ’ ’
Plaintiffs argue that the local law was adopted merely as a means to favor one business over another, i.e., to discriminate against and in part prohibit unattended laundromats or launderettes so as to aid the attended ones in their competition with the unattended. If it could be demonstrated that that was the sole purpose and effect of the legislation, that would be a basis for declaring the local law invalid. (See, e.g., Trio Distr. Corp. v. City of Albany, 2 N Y 2d 690 [1957], supra; Good Humor Corp. v. City of New York, 290 N. Y. 312 [1943]; Chiropractic Assn. of N. Y. v. Hilleboe, 12 N Y 2d 109, 120 [1962].) But this has not been demonstrated to be the purpose of the municipal legislature in the case at bar. There has been a showing, of course, that the attended launderettes worked for the enactment of this legislation and that their purpose was to benefit the attended launderettes at the expense of the unattended. But it is equally true that the unattended launderettes were heard in opposition to the legislation. And there is no reason to believe that the Police Commissioner, or the Fire Commissioner, or the Commissioner of Licenses, or the municipal authorities generally, simply wanted to favor the attended launderettes over the unattended.
*311 Conflicting pressures by persons interested is a normal incident of legislation. I note that in Soon Hing v. Crowley (113 U. S. 703, 710-711 [1885], supra) the court refused to inquire into the supposed hostile motives of the municipal legislators in passing the legislation fixing the hours of laundries therein involved, saying: ‘ ‘ And the rule is general with reference to the enactments of all legislative bodies that the courts cannot inquire into the motives of the legislators in passing them, except as they may be disclosed on the face of the acts, or inferrible from their operation, considered with reference to the condition of the country and existing legislation. The motives of the legislators, considered as the purposes they had in view, will always be presumed to be to accomplish that which follows as the natural and reasonable effect of their enactments. Their motives, considered as the moral inducements for their votes, will vary with the different members of the legislative body. The diverse character of such motives, and the impossibility of penetrating into the hearts of men and ascertaining the truth, precludes all such inquiries as impracticable and futile. ’ ’
On the whole, I do not think a sufficient showing has been made to warrant the court in declaring invalid so much of the local law as requires laundries to be closed from midnight to 6:00 a.m„ and as requires an attendant on the premises from 6:00 f.m. until closing.
With respect, however, to the Sunday provision, I agree with Mr. Justice Gold that that provision of the statute is invalid.
In People ex rel. Kieley v. Lent (166 App. Div. 550, 551 [2d Dept., 1915], affd. 215 N. Y. 626 [1915]) the Appellate Division said: ‘1 The Legislature alone may command how Sunday shall be kept ”. This of course was before the Home Buie Amendment to the State Constitution. But examination of the present statutes persuades me, as it did Mr. Justice Gold, that the State has pre-empted the field of Sunday legislation:
(a) Penal Law, article 192, “Sabbath”, sections 2-140 to 2153, sets forth a rather complete system of Sabbath law regulations.
(b) Penal Law, section 2143 provides in part: “ All labor on Sunday is prohibited, excepting the works of necessity and charity.” Penal Law, section 2146, provides: “All trades, manufactures, agricultural or mechanical employments upon the first day of the week are prohibited, except that when the same are works of necessity they may be performed on that day in their usual and orderly manner, so as not to interfere with the repose and religious liberty of the community.” It thus appears that — except as other specific provision is made by particular *312 statutes — all labor, trades and employments except works of necessity (and charity) are forbidden on Sunday while works of necessity (and charity) are permitted. This appears to leave almost no middle ground and no room for city legislation (though it may be that some occupations — particularly unattended laundromats — are neither labor nor trades, etc. (cf. People v. Welt, 8 N Y 2d 961 [1960]). The city cannot permit a work that is not a work of necessity or charity, and it cannot forbid work which is a work of necessity or charity. And as these words are used in a State statute, their meaning is a matter of State law, beyond the power -of the city to define.
(c) When the Legislature meant to give the city power to legislate in the field of Sabbath regulation, it did so by express provision. Thus Penal Law, sections 2145, 2147, 2151 and 2152, allow certain activities — theatres, motion pictures, sports, parades- — -on Sunday if a local law or ordinance permits it. Conversely, Penal Law, section 2152, gives municipalities the power to prohibit certain such activities by local law or -ordinance. These express provisions giving cities power to regulate Sabbath observances in certain cases indicate that except as so expressly authorized, cities have no power to enact Sabbath legislation.
The Sunday provision is also invalid as discriminatory. Neither the Police Commissioner, the Fire Commissioner, nor the Commissioner of Licenses recommended or took any position as to the Sunday provision of the statute. There has been no showing of any reason why of all the activities in the city which are not prohibited by State law to be carried on on Sunday, the city should decide that laundries should be closed on Sunday.
Accordingly, I hold that the Sunday provision is invalid.
However, the invalidity of the Sunday provision does not invalidate the entire local law. The provisions are separable.
A classic statement of the governing principles was made by Judge Cabdozo in People ex rel. Alpha Portland Cement Co. v. Knapp (230 N. Y. 48 [1920]): “In this state, we have gone far in subdividing statutes, and sustaining them so far as valid * * *. The tendency is, I think, a wholesome one. Severance does not depend upon the separation of the good from the bad by paragraphs or sentences in the text of the enactment * * *. The principle of division is not a principle of form. It is a principle of function. The question is in every case whether the legislature, if partial invalidity had been foreseen, would have wished the statute to be enforced with the invalid part exscinded, or rejected altogether. The answer must be *313 reached pragmatically, by the exercise of good sense and sound judgment, by considering how the statutory rule will function if the knife is laid to the branch instead of at the roots ” (p. 60).
“ I find it unbelievable that a legislature willing to impose a tax with those items in, would be unwilling that the tax should stand if those items were out. Undoubtedly it wished them in if it had the legal right to keep them. To say that does not mean that rather than lose them, it would throw the project to the winds. Laws are not to be sacrificed by courts on the assumption that legislation is the play of whim and fancy. A doctrinaire emphasis on the possible rather than the probable would forbid severance at all times. No doubt it is easy, sheltering ourselves behind some implacable tenet of the separation of governmental powers, to insist upon a certainty impossible of attainment. We do small service to the state by so intransigent a pose. Our right to destroy is bounded by the limits of necessity. Our duty is to save unless in saving we pervert. When all the world can see what sensible legislators in such a contingency would wish that we should do, we are not to close our eyes as judges to what we must perceive as men ” (pp. 62-63).
Applying these tests to the local law here involved, it is unbelievable that a municipal legislature willing to require midnight to 6:00 a.m. closing and an attendant from 6:00 p.m. to midnight on weekdays, with complete Sunday closing, would be unwilling that the weekday night closing and evening attendant provisions should stand if the Sunday closing were out. Accordingly, the provisions of the local law insofar as applicable to all days except Sunday are not invalidated by the invalidation of the Sunday provision.
There remains the question of whether and to what extent the weekday regulations shall apply to Sunday.
The day for purposes of the statute may be considered in three segments: midnight to 6:00 a.m.; 6:00 a.m. to 6:00 p.m.; and 6:00 p.m. to midnight.
As to the 6:00 a.m. to 6:00 p.m. segment, the answer is clear. The Sunday provision having been stricken, and there being no restrictions as to closing or presence of an attendant on weekdays during the period from 6:00 a.m. to 6:00 p.m., there are therefore no such restrictions during this period on Sundays.
As to the midnight to 6:00 a.m. segment, the statute says that laundry operations “ shall close all day Sunday and between the hours of 12:00 midnight to 6:00 a.m. on all other days.” If the phrase “all day Sunday and” is stricken, that leaves a verbal question as to the meaning of “ all other days ”. But *314 the problem is only a verbal one. “ Severance does not depend upon the separation of the good from the bad by paragraphs or sentences in the text of the enactment * * *. When all the world can see what sensible legislators in such a contingency would wish that we should do, we are not to close our eyes as judges to what we must perceive as men.” (People ex rel. Alpha Portland Cement Co. v. Knapp, supra.) The phrase “ on all other days ” is obviously merely the correlative of the phrase “ all day Sunday”; if one goes out, so does the other. Whether the Sunday legislation were held valid or invalid the municipal legislature intended laundry operations to be closed from midnight to 6:00 a.m. To apply that closing provision to Sunday treats Sunday the same as all the other days. Accordingly, I hold that notwithstanding* the invalidity of the Sunday provision, laundry operations are required to be closed from 12:00 midnight to 6:00 a.m. on Sundays as on other days.
As to the third segment, from 6:00 p.m. until midnight, the local law provides: “All coin operated laundries shall be required to have on the premises an attendant from 6 p.m. until closing.” If the Sunday closing provision were valid, this provision would of course be inapplicable to Sundays. With the Sunday provision excised, this provision literally would seem to apply to Sunday. But here we run into the problem that the presence of an attendant on Sunday would probably be a violation of section 2143 of the Penal Law, forbidding Sunday work with certain exceptions (People v. Rubenstein, 17 Misc 2d 10 [Ct. of Spec. Sess., Kings County, 1959]). In these circumstances, it is impossible to treat the 6:00 p.m. to midnight segment on Sundays in the same way as the 6:00 p.m. to midnight segment on weekdays, i.e., open with an attendant. Either laundromats must be permitted to operate without an attendant during that segment on Sunday, or they must be closed. We have no reliable indication of what the municipal legislature would have wished as to this segment on Sunday if it had known that the.provision requiring closing* all day Sunday would be invalidated by the court. In the circumstances I hold that laundries may remain open from 6:00 p.m. to midnight on Sundays without an attendant.
I direct judgment (a) declaring New York City Local Law No. 14 of 1961 valid as to weekdays; invalid as to requiring closing* or an attendant on Sundays from 6:00 a.m. to midnight ; and as validly requiring laundry operations to remain closed from midnight to 6:00 a.m. on Sundays; and (b) enjoining the enforcement of the invalid portions of the local law; all without costs. ' . ■ : , ,
*315 However, pending a prompt appeal to the Appellate Division, the parties may provide for a stay of this judgment to the extent that it may be inconsistent with the existing temporary injunction.