Raymond L. Wilkes, J.
The defendant Earl F. Kahl is charged with violations of sections 2143 and 2147 of the Penal Law. In substance, section 2143 prohibits the performance of labor on Sunday and section 2147 bars the public selling or offering for sale of goods on Sunday. Mr. Kahl is a sales employee of Paddock-Welding Swimming Pool Corporation, a New York firm engaged in the business of constructing, selling and installing swimming pools in Nassau County and areas adjacent thereto. Paddock-Welding maintains a showroom at 435 Old Country. Road, Westbury, New York, wherein it exhibits for display three swimming pools of varying design each of which is permanently affixed to the realty and hence not of themselves for sale. On Sundays the showroom is visited on an average by between 8 to 25 persons during the hours of noon to 5:00 p.m. in groups of approximately, two, four, six or eight, as the case may be. The president of the corporation testified that the afore-mentioned three pools constitute the firm’s “ showcase ”. It further appears that most of the contracts of sale which the firm enters into with its customers are consummated at the homes of the latter after their premises have been examined and their requirements precisely ascertained. The evidence further disclosed that at the time of the defendant’s arrest there were only two prospective customers on the premises who had come that day merely to “browse around”. There was no clearly definite testimony relative to the presence of any other potential customers.
Paddock-Welding’s place of business is located in a predominantly commercial area bounded on the south, east and west by a variety of commercial enterprises. There are private homes immediately to the north with the most proximate house of worship being eight or nine blocks away in a northeasterly direction,
*1090 The defendant challenges the applicability of the statutes upon which this prosecution is based upon the following grounds:
(a) The enforcement of the Sabbath law against the defendant without comparable enforcement against businesses in the same general class is discriminatory and arbitrary and therefore unconstitutional:
(b) The defendant was not engaged in any selling on Sunday in violation of section 2147 of the Penal Law.
(c) Section 2143 of the Penal Law is inapplicable since the defendant was not engaged in any labor on Sunday which constituted a serious interruption of the repose and religious liberty of the community as provided in section 2140 of the Penal Law.
Let us at the onset proceed to discuss the constitutional question raised by the defendant to the effect that Paddock-Welding has been singled out for prosecution in the sense that there appears to be a dearth of similar prosecutions against such businesses as real estate agencies and boat showrooms. The defendant, therefore understandably assumes the posture that this prosecution is discriminatory and in violation of the Fourteenth Amendment of the Constitution of the United States as well as section 11 of article I of the Constitution of the State of New York, the so-called z< equal protection ” clauses.
The principal thrust of the defendant in support of this stimulating arena of inquiry is found in the leading case of Yick Wo v. Hopkins (118 U. S. 356). The appellant therein had been convicted pursuant to a San Francisco ordinance which made it a misdemeanor to operate a laundry within the City of San Francisco without having first obtained the consent of the Board of Supervisors excepting his business from being located in a building constructed of either brick or stone. At that time, namely, in the year 1880, there were approximately 320 laundries in San Francisco of which 240 were owned by subjects of China and of the entire number (320), ipproximately 310 were constructed of wood. The appellant therein, together with more than 150 other persons similarly situated, was prosecuted pursuant to the ordinance. However, some 80 odd other persons not subjects of China who were also operating laundries in wooden buildings were not prosecuted. The Supreme Court held that the prosecution, of Yick Wo and his countrymen was a discriminatory enforcement of the ordinance and therefore in violation of the equal protection clause of the Fourteenth Amendment.
Suffice it to say, that, although virtually no business or occupation within the orbit of statutory prohibition can fail to find a semblance of its counterpart within the sanctuary of decisional *1091 exception upon the at times tenuous theory of comparability, the facts contained in Tick Wo are clearly not apposite. The deeply substantive similarity of the Chinese laundrymen’s position in the one instance, only serves to transparently illuminate the singularity of the case at bar. The citation and the reality are not congruent herein.
In addition, it has been held, upon the most empyrean plateau of the law that the mere nonenforcement of a statute does not spell out a violation of the Fourteenth Amendment. In Snowden v. Hughes (321 U. S. 1) the court stated that “ The unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination. This may appear on the face of the action taken with respect to a particular class or person (cf. McFarland v. American Sugar Co., 241 U. S. 79, 86-87) or it may only be shown by extrinsic evidence showing a discriminatory design to favor one individual or class over another not to be inferred from the action itself, Yick Wo v. Hopkins, 118 U. S. 356, 373-4. But a discriminatory purpose is not presumed, Terrance v. Florida, 188 U. S. 519, 520; there must be a showing of ‘ clear and intentional discrimination ’ ”.
The record before me is barren of such ‘1 clear and intentional discrimination ” as would justify a holding that the actions of the authorities were contrary to the defendant’s rights under and in violation of the Fourteenth Amendment. In consonance with the holding of our Court of Appeals in People v. Friedman (302 N. Y. 75) there has been no showing here of a pattern of discrimination consciously practiced as in Yick Wo v. Hopkins (supra). Had there been such proof, it would be well to bear in mind, that although businesses may differ in kind, the law must be applied to all with equal felicity.
Apart from the constitutional question, the conglomerate of the facts in this case, particularly when viewed from the vantage point of present-day experience, clearly commend themselves to an inquiry of a somewhat less than transient nature. Mr. Justice Holmes tells us in “ The Common Law ” in words classic in content, “ The life of the law has not been logic, it has been experience I will dwell no further upon the singular significance of that thought except to say that it finds its Ariadne thread of kinship in the words of Mr. Justice Cardozo when he says in “ The Nature of the Judicial Process,” “ Those [judgments] that cannot prove their worth and strength by the test of experience are sacrificed mercilessly and thrown into the *1092 void”. * * * “ Every new case is an experiment ” (italics supplied).
Diversity of fact makes for disparity of judgment in life as well as in the law. So-called Sabbath law cases are as various in number as they are different in kind, and where the accepted rule of one case would yield an unjust result in another, the facts as well as the rules must each necessarily receive a consideration particularly their own. In that spirit, let us endeavor to apply the test of experience to the law as well as the facts before us.
In People v. Polar Vent of America (10 Misc 2d 378, 379-380) (a case of more than passably similar circumstance to the instant one), Nassau County Court, October 8, 1957, Judge Cyril J. Brown enunciated the philosophical premise of our Sabbath laws in these trenchant terms: “The Sabbath laws are remedial statutes in harmony with the religious sentiment of the public and intended to promote public morals and good order (People v. Moses, 140 N. Y. 214). Such legislation is not to be given a narrow and technical construction; but rather a reasonable and common sense interpretation must be given such as will render the legislative intention effectual in view of the evil sought to be suppressed (Smith v. Wilcox, 24 N. Y. 353). They are to be limited by the reasons for their enactment, however (People v. Dunford [207 N. Y. 17]), and, the Court of Appeals cautions, * “ Acts otherwise innocent and lawful, do not become crimes, unless there is a clear and positive expression of the legislative intent to mahe them criminal” ’ (People v. Shifrin, 301 N. Y. 445, 447).” (Italics supplied.)
Whether or not the actions of this defendant constituted a “ public selling ” or “ an offering for sale ” within the prohibition of section 2147 of the Penal Law depends in the ultimate upon the testimony elicted during the trial. In my considered view the evidence herein fails to establish beyond a reasonable doubt that an offer to sell was actually made by the defendant, that prices were quoted, money accepted or a memorandum of sale executed. The Paddock-Welding premises is a display showroom and the mere exhibiting of wares and the dissemination of information (which is all that took place here), leading hopefully to future appointments, with little if anything else, does not constitute any of the traditional elements of a sale or selling within the proscription of section 2147. (People v. Polar Vent of America, supra.)
The rationale which underlies the enactment of all of our Sabbath laws is synthesized in section 2140 of the Penal Law as follows: “ The first day of the week being by general consent *1093 set apart for rest and religious uses, the law prohibits the doing on that day of certain acts hereinafter specified, which are serious interruptions of the repose and religious liberty of the community.” (Italics supplied.)
In this instance a conviction of the defendant may not he had pursuant to section 2143 of the Penal Law prohibiting labor on the Sabbath in the absence of proof that his activities seriously interrupted the repose and religions liberty of the community. In addition, as I indicated initially, the only other persons who emerged from the testimony with certainty as having been present at the time of the defendant’s arrest, apart from the defendant himself, were the arresting officer, the People’s one other witness and the wife of said witness (the two “browsers ”), Any testimony even tending to establish the presence of others is, to say the least, somewhat diffuse in nature. This is the principal characteristic which distinguishes the result herein from People v. Polar Vent (supra), wherein there were over 300 persons present in the defendant’s showroom on a single Sunday. (See People v. Deen, 3 A D 2d 836 [2d Dept.], affd. 4 N Y 2d 708; People v. Dunford, 207 N. Y. 17; People v. Binstock, 7 Misc 2d 1039; People v. Sacks, 2 Misc 2d 201; People v. Law, 16 Misc 2d 696; People v. Hilton, 119 N. Y. S. 2d 692.)
In view of the foregoing this court finds the defendant not guilty upon each of the counts contained in the information charging him with violations of sections 2143 and 2147 of the Penal Law and said information is accordingly in all respects dismissed.