Samuel M. Gold, J.
These are motions by plaintiffs, in two consolidated actions, to enjoin defendants, the City of New York, and the Mayor, the Police Commissioner, and the License Commissioner, from enforcing a local law purporting to regulate coin-operated laundries in the city, on the ground that the local law is void. The local law in question, Local Law No. 14 for the year 1961, amends section B32-167.0 of the city’s Administrative Code, so as to require licensing of automatic and coin-operated laundries and the furnishing of bonds by applicants for such licenses. The law further amends section B32-173.0 of the Administrative Code, so as to require all coin-operated laundries 11 to have on the premises an attendant from 6:00 p.m. until closing”, and so as to require all automatic or coin-operated laundries to ‘6 close all day Sunday, and between the hours of 12:00 midnight until 6.00 a.m. on all other days.”
Persons who operate a laundry without a license, or who violate any of the provisions of the local law are declared to be *79 subject to a fine of not more than $200 for each offense, or to imprisonment of not more than 30 days, or both.
The provisions requiring all automatic or coin-operated laundries, whether attended or unattended, to close between the hours of 12:00 midnight and 6:00 a.m. and requiring coin-operated laundries to have an attendant upon the premises from 6 :Q0 p.m. until midnight, appear to this court to be valid exercises of the city’s police power. A survey conducted in November, 1960, before the passage of the local law, by Police Precinct Commanders throughout the city, disclosed that many crimes had been committed in unattended coin-operated laundries, including crimes against the person, grand larceny, burglary, and malicious mischief, and that 50% more crimes were committed in unattended laundromats than in attended laundromats. During the hours of the evening and the night, the prevailing conditions are more favorable to the commission of crimes than in the daytime. The peak of criminal activity, according to a recent report on crime publicized by the Police Department, occurs between 6 :Q0 p.m. and 2:00 a.m. Unattended laundries become hangouts for drunks, book-makers, narcotic addicts and other undesirable persons. Unattended coin boxes are invitations to larceny and other crimes which might endanger persons using the laundries at the time. Reports from other cities indicate that crimes such as rape have taken place in unattended laundromats. Similar crimes can occur in New York City. After 12:00 p.m., even the presence of an attendant has been regarded by the lawmakers as insufficient to furnish adequate protection, presumably by reason of the fact that very few pedestrians are on the streets between midnight and 6:00 a.m. and because the presence of an attendant on the laundry premises during these hours would tend to encourage the commission of crimes outside the laundromats by criminals who would lie in wait and follow persons emerging from the laundromats. The local law under attack was enacted only after public hearings, at which the passage was recommended by the Police Commissioner and many other officials and organizations, including the Co-ordinating Committee of Catholic Lay Organizations (Archdiocese of New York), the Community Council, the Diocese Council of Catholics (Diocese of Brooklyn), Kensington Civic League and Auburndale Civic Improvement Association.
The provision requiring an attendant between 6:00 p.m. and midnight and the provision for closing between midnight and 6:00 a.m. have, as at least one of their objectives, the promotion of the safety of the customers of the laundromats and the *80 prevention of crimes, and the provisions in question are reasonably calculated to help accomplish that objective. The City Council is to be commended for its effort to reduce the incidence of crimes involving unattended laundromats.
Van Sciver v. Zoning Bd. of Adjustment (396 Pa. 646) relied upon by plaintiffs, has no application here. That case involved the reasonableness of restrictions imposed by a zoning board in permitting a variance for a laundromat. One of the restrictions required the presence of an attendant during all hours of operation. The court held that restriction arbitrary since it had no relationship to the propriety of the zoning variance. The court said (p. 657): “ To justify the requirement of an attendant, in a district zoned 1 commercial ’, the board would equally have to require an attendant if a laundromat were zoned ‘ industrial ’ or the use of such laundromat in apartment houses zoned ‘residential’.” No question of the validity of an ordinance requiring an attendant only between 6:00 p.m. and 12:00 p.m. was presented in the cited case.
Plaintiffs claim that the local law is void, because it does not define the exact spot where the attendant is to be located or his duties and responsibilities, or his age, or sex. This objection appears to be without merit. The attendant is required to be “ on the premises ” namely in the space devoted to the laundering operations. The failure to specify his duties does not render the law invalid. The legislative body apparently considered that the mere physical presence of an attendant, without any specified duties would tend to discourage the commission of crimes. For the same reasons, the failure to prescribe the attendant’s age or sex is insufficient to invalidate the local law. Knowledge of the workings of the machines and ability to repair them where necessary is desirable, but such knowledge and ability would be of no value to an attendant, as far as the discouragement of crimes is involved. Plaintiffs’ criticism of the provision for an attendant as too vague to be enforcible would apply equally to the provision of section 1210 of the Vehicle and Traffic Law, which prohibits a person from permitting an automobile to stand “unattended” without removing the key and doing certain other acts. The section does not state where the attendant must be nor does it specify his age, sex, etc.
The claim is also made that the licensing of the unattended laundromats is pointless, because the property to be washed never leaves the customer’s possession. The fact is, however, that the customer places his property in the laundry machines. The condition of a machine may be such that the user will be *81 unable to open it and extract his laundry at the completion of the operating cycle. A defective machine may also result in damage to a customer’s laundry, or even to its total destruction. Or a customer may deposit a coin in the machine and then find it is out of order and that he is unable to get the coin back. Licensing of the automatic or coin-operated laundromats is calculated to reduce the risk of such occurrences from defective machines and thereby to serve the public interest.
It is contended that in violation of section 38 of the City Charter, the local law was transmitted to the Board of Estimate for approval before it was presented to the Mayor. This was necessary, because the local law gave new powers to the License Commissioner, for section 39 of the charter provides that a local law conferring powers and duties on officers or agencies of the city shall not become effective unless it is approved by the Board of Estimate before being presented to the Mayor for approval.
It is also claimed that the hearing conducted by the Mayor was held more than 10 days after the local law was presented to the Mayor. The hearing must be held within 20 days from such presentation (City Home Rule Law, § 13, subd. 5). It was held 15 days after presentation and the hearing was, therefore, timely.
Attack is also made upon the local law, because it fixes August 15, 1960 as its effective date, whereas the Mayor did not sign it until March 15, 1961. In view of the fact that the law did not become effective until its filing with the Secretary of State (City Home Buie Law, § 22, as amd. by L. 1960, ch. 734), there is no merit in this claim of plaintiffs.
Plaintiffs also urge that the failure to file the local law with the Secretary of State within the five days prescribed by section 22 (supra) invalidates the law, although it was filed four days thereafter. Section 22 does not impose any penalty for a late filing, other than the provision that the law is not to take effect until filed. The provision for filing within five days is directory, not mandatory. Failure to file within the five days does not invalidate the local law.
There remains for consideration the provision that the automatic or coin-operated laundries, whether attended or unattended, shall “ close all day Sunday ”. The Penal Law of the State of New York does not forbid the operation of self-service laundromats on Sunday (People v. Welt, 8 N Y 2d 961; People v. Andob Corp., 25 Misc 2d 542). In People ex rel. Kieley v. Lent (166 App. Div. 550, affd. 215 N. Y. 626) the City of Yonkers, under its charter, had the right to regulate shows, *82 including the right to license motion pictures. It was given the power by a 1913 statute to enforce ordinances by affixing penalties, forfeitures and imprisonment. It enacted an ordinance prohibiting Sunday performances and providing for fines for those convicted of violating the ordinance. The Appellate Division declared that “ The Legislature alone may command how Sunday shall be kept ’ ’ and that ‘ ‘ Hence the City of Yonkers cannot independently compel and enforce Sunday closing, by means of fine or imprisonment unless such prohibition is part of the law and policy as declared by the Legislature.” The court stated that an intent that a city ordinance was to supersede State law is not to be implied or inferred from a general grant of power to the city to enact legislation. The Court of Appeals affirmed. People ex rel. Kieley v. Lent (supra) has been cited or quoted from with approval in many appellate and lower court decisions (see, e.g., Matter of Kress & Co. v. Department of Health, 283 N Y. 55, 60; People v. County of Westchester, 282 N. Y. 224, 232; Good Humor Corp. v. City of New York, 264 App. Div. 620, 626; People v. County of Westchester, 257 App. Div. 769, 771). It has never been overruled or adversely criticised. In Matter of Fybern Holding Corp. v. Zeitler (227 App. Div. 840) the holding was that a municipality may not, in the absence of express legislative authorization, forbid public dancing on Sundays. An application to compel the city authorities of Buffalo to issue a license or permit for Sunday dancing was granted at Special Term, notwithstanding the provisions of a city ordinance prohibiting the issuance of a permit for Sunday dancing. The order was affirmed. Respondents’ brief in the Appellate Division relied upon People ex rel. Kieley v. Lent (supra) and similar authorities.
In Hitchcock v. Foote (140 Misc. 401, 403) the court declared: ‘ ‘ Apparently, in this State, a municipality, in the absence of express legislative authority, has no power to declare public dancing on Sunday unlawful.”
Not a single case in this State has been cited by the Corporation Counsel in which a municipal ordinance has been held valid, which forbade acts on Sunday which were not prohibited by the State Legislature. The cases relied on by the defendants are all clearly distinguishable. In City of Brooklyn v. Toynbee (31 Barb. 282) the action was one to recover a penalty for violation of a municipal ordinance prohibiting the sale of liquor on Sunday. The court, in holding the ordinance valid, pointed out that the sale of liquor was already forbidden by State statute and that there was no conflict between the ordinance *83 and the State statute merely because the statute already prescribed penalties for the same acts. The municipality had not attempted to make illegal what the State Legislature permitted, as in the case now before this court. In Village of Cohoes v. Moran (25 How. Prac. 385) the action was for a penalty for giving away or selling liquor on Sunday in violation of a municipal ordinance. Here again, as pointed out by the court, the giving away or selling of liquor on Sunday was forbidden by a State statute, which made it a misdemeanor, but prescribed no penalty. The holding was merely that there was no inconsistency between the municipal provision for a penalty and the State statute making the same acts a misdemeanor, but fixing no penalty. In Conley v. City of Buffalo (65 Misc. 100) no claim was made that the provision of the ordinance prohibiting dancing on Sunday had been violated. Furthermore, the Conley case (supra) was stated in Hitchcock v. Foote (supra) to have been erroneously decided to the extent that it upheld an ordinance forbidding dancing on Sunday.
In Geyer v. Buck (175 N. Y. S. 613) no point was made regarding that feature of the ordinance which related to Sundays and, furthermore, the Legislature had expressly approved and validated all the ordinances except section 20, which was added later, but contained no provision as to Sunday closing.
In City of New York v. Alhambra Theatre Co. (136 App. Div. 509, affd. 202 N. Y. 528) the Sunday performances prohibited by the local ordinances were also forbidden by the Penal Code enacted by the State Legislature. The holding was merely that the fact that the forbidden acts were made misdemeanors by the Penal Code was insufficient basis for denying to the city the right to pass an ordinance providing for a $500 penalty and the revocation of the wrong-doer’s license. The only other case cited by defendants involving an ordinance making certain conduct illegal on Sundays is Gieser v. Town of Amherst (222 App. Div. 719). No opinion was written. Examination of the record on appeal shows that no question whatever of the validity of a Sunday closing law was involved. The court cited two cases in support of its holding. One of them, Safee v. City of Buffalo (204 App. Div. 561) does not support the present plaintiffs at all. In that case, the Special Term had denied injunctive relief against the city “ except as to a provision for closing between twelve o’clock midnight on Saturdays and one p.m. on Sundays ” (pp. 562-563; italics supplied) and except as to a provision dealing with drinking and lounging at bars. The plaintiff appealed only from the denied portion of his application, which did not involve the Sunday closing provisions of *84 the ordinance. No cross appeal was taken by the City of Buffalo. The affirmance by the Appellate Division, therefore, did not involve the validity of the Sunday closing provisions of the ordinance. Indeed, the granting of injunctive relief to the plaintiff as to the Sunday closing provisions of the ordinance was itself a ruling that they were void. No opinion was written in the other case cited in Gieser v. Town of Amherst (supra). That case is People v. Hallin (217 App. Div. 816, affd. 244 N. Y. 586). The memorandum of the Court of Appeals indicates that no question of the validity of a Sunday closing ordinance was presented for adjudication. The defendant in that case had been charged with violating an ordinance which forbade the harboring of intoxicated persons, the permission of disorderly, indecent, immoral or unlawful conduct, etc.
In Hitchcock v. Foote (supra) the court stated (p. 403) that the decision in Gieser v. Amherst (supra) “ was apparently predicated on the power of the municipality to regulate soft drink places, because the two authorities relied upon for the reversal were ” cases which 11 involved violation of soft drink ordinances. ’ ’
It is to be noted that article 192 of the Penal Law constitutes an enactment by the Legislature which deals comprehensively with the entire subject of what may and what may not be done on Sunday. It consists of 16 sections covering many and various types of activities and lists a number of exceptions to the general prohibitions it contains. It seems clear that the field of how Sunday is to be legally observed has been pre-empted by the State Legislature and that a municipality may, therefore, not invade that field (Matter of Kress v. Department of Health, 283 N. Y., 55, 60, supra; Good Humor Corp. v. City of New York, 290 N. Y. 312; Matter of Carvallo v. Cooper, 228 App. Div. 719 [where an ordinance which prohibited an act not forbidden by the Labor Law of the State was held void]; Jewish Consumptives’ Relief Soc. v. Town of Woodbury, 230 App. Div. 228, 234, affd. 256 N. Y. 619).
In People v. Lewis (295 N. Y. 42) cited by defendants, the court pointed out that (p. 51) “ The local law prohibits nothing that the State law permits ”.
In this court’s opinion, that portion of the local law under attack on the present motions which forbids automatic or coin-operated laundries to be open on Sunday is invalid for the reasons heretofore given. It does not follow, however, that the entire local law must, therefore, be held void. The provision for Sunday closing is clearly severable from the provisions for licensing, for an attendant between 6:00 p.m. and midnight, and *85 for closing between midnight and 6:00 a.m„ “ on all other days ” i.e. days other than Sundays. No express provision that the invalidity of one provision shall not affect the validity of other provisions is necessary (People ex rel. Economus v. Coakley, 110 Misc. 385, appeal dismissed 195 App. Div. 919; Duryee v. Mayor, 96 N. Y. 477, 491; People ex rel. McPike v. Van De Carr, 91 App. Div. 20, 26, affd. 178 N. Y. 425).
The court accordingly holds that the invalidity of the Sunday-closing provision does not affect the validity of the other provisions of Local Law No. 14 for the year 1961.
The motions are granted only to the extent of enjoining defendants from enforcing the Sunday-closing provision, and otherwise denied.