40127. HEARD v. BOLTON, Judge.

Decided May 29, 1963.

*Cumming & Cumming, Joseph R. Cumming,* for plaintiff in error.

*Beck, Goddard, Owen & Smalley, Robert H. Smalley,* contra.

NICHOLS, Presiding Judge. The question presented for review is whether, as contended by the defendant, that part of the ordinance which requires a self service (coin operated) laundry to close between the hours of eleven p. m. and seven o'clock a. m. unless it has an attendant on duty during such hours is unreasonable, arbitrary and oppressive, and bears no relation to the good order, peace, and safety and health of the community.

No question is presented as to the business being a nuisance as was the case in *Green v. Mayor &c. of Savannah,* 6 Ga. 1, nor as to a business subject to more stringent regulations under the police power of the municipality. See *Chaires v. City of Atlanta,* 164 Ga. 755, 759 (139 SE 559, 55 ALR 230). In the *Chaires* case, the ordinance required barber shops to close at seven p. m. on week days and nine p. m. on Saturdays, and the Supreme Court held that such ordinance was void as being unreasonable. It was there said: "There are reasons for closing pawnshops and junk-shops and pool and billiard-rooms, which it is not necessary here to set forth, but which are clearly not applicable to barbershops. Persons engaged in the operation of barber-shops are carrying on a perfectly lawful business. It is not in any sense of the word a noxious business. In fact, the business may be regarded as indispensable in the present development of our civilization, if we have regard to the requirements of decency and cleanliness. There is ample evidence in the record to show that if the barber-shops are closed at seven o'clock in the evening and not permitted to open until next morning, there will be a large and numerous class of citizens, both white and colored, who cannot avail themselves of the service of barbers. It is shown that certain mercantile establishments, having in their service

numerous employees, require the attendance of those employees until a later hour than that at which the barber-shops under this ordinance would be required to close. And in addition to this, those engaged in domestic service and in the various branches of such service are detained in the discharge of their duties in this employment to an hour that would prevent their availing themselves of the service rendered in barber-shops, if such shops are closed at the hour of 7 o'clock. The section of the ordinance with which we are now dealing is therefore void, as being unreasonable, upon the grounds which we have stated above; and other grounds could be adduced if necessary. And it is discriminatory, because it selects one particular lawful business, that is in no wise noxious, and requires those operating this business to close at a very early hour, but leaves unregulated as to hours of closing various other businesses." In the same decision the Supreme Court quoted at length from Yee Gee v. San Francisco, 235 F 757, where an ordinance which prohibited any laundry from operating anywhere within the limits of San Francisco during certain hours was held to be unreasonable and void and which case distinguished cases involving ordinances reasonably based on fire safety.

The ordinance under attack in the case sub judice, while it does not provide in express terms that "coin operated self service laundries" must close from eleven p. m. until seven a. m., yet does in fact accomplish such end for it provides that such laundries, if open, must have an attendant on duty during such hours of the day. Thus the self service coin operated feature of the laundry is abolished and the laundry becomes one with an attendant although the machines may continue to be operated by the coin-in-slot method. No contention is made, nor indeed could it be made, that the business is noxious or is any less indispensable than were the barber shops referred to in the case of *Chaires v. City of Atlanta*, 164 Ga. 755, supra.

The evidence adduced showed that perhaps it might be more difficult to properly police the city if unattended places of business remain open after dark, but is this reason enough to close down a lawful business? As was said in City of Jackson v. Murray-Reed-Stone & Co., 297 Ky. 1 (178 SW2d 847): "The

fact that the city may have to go to more expense in policing the town at night should business be transacted at late hours is no reason for sustaining the ordinance. It might as well be said that an ordinance closing a respectable mercantile establishment during the afternoon hours would be constitutional because such a business attracts crowds into the town which require more policemen to handle when such a house is operated than when it is closed." See also Town of McCool v. Blaine, 194 Miss. 221 (11 S2d 801).

The business operated by the defendant being a legitimate, useful and lawful one and, in view of the tendency of modern business to rely more and more on automation in order to provide better services to the public at a lesser cost, the ordinance in question was unreasonable and void.

The trial court erred in affirming the judgment of the Criminal Court of Griffin and in dismissing the certiorari.

*Judgment reversed. Frankum, J., concurs. Jordan, J., concurs specially.*

JORDAN, Judge, concurring specially. I agree with the result reached here due to the facts in this particular case. While the business involved in this case is a legitimate and useful business, yet the city under its charter powers does, and indeed must, have the power to regulate the hours and conduct of such business if and when it becomes necessary to preserve the good order, health, peace and morality of the city.

We can make no general ruling applying to coin-operated laundries merely because such a business is not noxious per se. Conditions may vary in different communities and circumstances surrounding such an operation may be completely harmless in one city or area and a crime-breeding spot in another. This was the apparent reasoning of the court in the case of Schacht v. City of New York, 219 NYS2d 53, in which the court held that an ordinance requiring all coin-operated laundries to close between the hours of 12 midnight and 6 a.m. and requiring such laundries to have an attendant upon the premises from 6 p.m. until midnight was a valid exercise of the police power of the city. The evidence in that case included a survey which disclosed that prior to such ordinance many crimes had been committed in unat-

tended coin-operated laundries, including crimes against the person, grand larceny, burglary and malicious mischief; that 50 percent more crimes were committed in unattended laundries than in attended laundromats; and that unattended laundries had become the hangouts for drunks, book makers, narcotic addicts, and other undesirable persons.

Upon a showing of such similar conditions existing in the City of Griffin or any other municipality in this State, I would most certainly conclude that the enactment of such an ordinance as here involved would be a valid exercise of the police power of that municipality. While it is not meant to suggest that a city must forego action on such matters until intolerable conditions actually exist, yet such action when taken must be supported by a showing that such conditions have become generally associated with the conduct of this particular business in this section and area, as distinguished from the experience of such business operation in another or isolated area. The threat of such harm must be imminent rather than merely anticipatory.

The evidence here showed that the plaintiff in error began operations in 1958 and now operates five places of business in the city and that during that time the fire department had answered 4 calls to these businesses, all involving only minor damage to electric motors and equipment. There was evidence that during this time there were 12 larcenies reported at these businesses, 8 of them in the same location, involving the pilfering of the coin machines. There was no showing that other crimes had been committed in or in connection with such business nor any showing that cases had been made by the city against persons loitering therein, nor any other instances of disorder arising out of the operation of such business.

Under such circumstances, the record fails to show that this legitimate business operation has become noxious or obnoxious to such an extent as would justify the enactment of a specific ordinance singling out and discriminating against this particular business activity. I therefore conclude that, in this case, such an ordinance was arbitrary and unreasonable.