139 N.J. Super. 74 (1976)
352 A.2d 595
TOWNSHIP OF LITTLE FALLS, PLAINTIFF-RESPONDENT,
v.
HENRY HUSNI, PROPRIETOR, T/A WASH 'N` DRY LAUNDROMAT, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted January 13, 1976.
Decided January 30, 1976.
*76 Before Judges MATTHEWS, LORA and MORGAN.
Messrs. Hengeveld and Hanse, attorneys for appellant (Mr. Ralph E. Faasse on the brief).
Mr. James V. Segreto, attorney for respondent.
PER CURIAM.
Defendant was convicted in municipal court and subsequently in County Court after a trial de novo on the record, of violating a municipal ordinance by operating a self-service laundry between the hours of midnight and 7 A.M. without an attendant on duty. It is undisputed that defendant violated the ordinance. The issue is whether the ordinance is reasonably related to the public health and safety or whether it is arbitrary and oppressive and not within the domain of the the police power.
Ordinance 7-9 of the Township of Little Falls, entitled "An Ordinance to License and Regulate the Operation of Self-Service Laundries, and to Prescribe Penalties for Violations," is comprised of nine sections, some of which establish a licensing scheme for self-service laundries (hereafter laundromats). Section five deals only with regulation of laundromats and is divided into eleven subsections. The subsection here in issue provides:
h. No self-service laundry shall be open for business between the hours of 12:00 P.M. and 7:00 A.M. but machines started before 12:00 P.M. need not be stopped until the operation is completed, provided that a self-service laundry may remain open between the hours of 12:00 P.M. and 7:00 A.M. if an attendant is on continuous duty during those hours.
*77 Defendant first contends that N.J.S.A. 40:52-1 (the licensing statute) does not authorize a municipality to enact an ordinance licensing and regulating the operation of self-service laundries and that since the licensing provisions of the ordinance are inseparable from the regulatory provisions thereof, the ordinance in its entirety is invalid.
Without in any way implying or passing upon the validity of the licensing provisions we reject defendant's contention that they are so intimately related to the regulatory provisions that both must stand or fall together. The test of total invalidity was set forth in Gross v. Allan, 37 N.J. Super. 262 (App. Div. 1955):
The question of severability of the invalid provision is one both of legislative intent, Yanow v. Seven Oaks Park, Inc., 11 N.J. 341, 361, 36 A.L.R.2d 639 (1953), and of whether the remaining provisions are functionally self-sufficient as containing the essentials of a complete enactment, Schait v. Senior, 97 N.J.L. 390, 393 (Sup. Ct. 1922). The two criteria must coexist. [at 269]
The regulations make no reference to "license" or "licensee" but constitute a separate, complete and intelligible unit. Contrast Tagmire v. Atlantic City, 35 N.J. Super. 11 (App. Div. 1955); Tillberg v. Kearny Tp., 103 N.J. Super. 324 (Law Div. 1968) and Mister Softee v. Hoboken Mayor and Council, 77 N.J. Super. 354 (Law Div. 1962). We can find no legislative intent that the licensing and regulatory provisions be considered as an inseparable unit. Rather, the structure of the ordinance, when coupled with the general severance provision in the Revised General Ordinances of Little Falls (§ 1.4) shows a legislative intent to preserve any portion of the ordinance that is not invalid and permits exercise of the preference in favor of severability. See Affiliated Distillers Brands Corp. v. Sills, 56 N.J. 251, 265 (1970); Angermeier v. Sea Girt, 27 N.J. 298, 311 (1958). Defendant was not charged with a violation of the licensing provisions and, in fact, he has apparently complied with them. Even assuming the invalidity of those provisions it *78 would, in view of our determination on severability, be improper to invalidate the regulatory provisions on that basis. Economy Ent., Inc. v. Manapalan Tp. Comm., 104 N.J. Super. 373, 377-378 (App. Div. 1969).
We find it unnecessary to pass upon defendant's contention that regulation of laundromats is not within the ambit of N.J.S.A. 40:52-1(g)[1] and we will assume for present purposes only that the rule of ejusdem generis bars application of the statute to laundromats. See Salomon v. Jersey City, 12 N.J. 379, 388-389 (1953), and compare Absecon v. Vettese, 13 N.J. 581, 587-588 (1953); General Roofing Co. v. Belmar, 77 N.J. Super. 469, 471-476 (App. Div. 1962) and Coast Cigarette Sales v. Long Branch Mayor & Council, 121 N.J. Super. 439, 449 (Law Div. 1972).
However, we are satisfied that even if authority to regulate laundromats cannot be found within N.J.S.A. 40:52-1(g) such authority exists as an attribute of the general police power pursuant to N.J.S.A. 40:48-2. Although our research reveals no reported New Jersey decision which specifically holds that laundromats may be regulated under N.J.S.A. 40:48-2, the broad interpretation our courts have given to the general police power and the wide variety of situations in which it has been held applicable (see, e.g. Justice Pashman's partial listing of these situations in his dissent in Sente v. Clifton Mayor and Council, 66 N.J. 204, 216-217 (1974)), make it undisputable that laundromats are subject to the police power. 7 McQuillin *79 Municipal Corporation (3 Ed. 1968), § 24.337 at 245 and generally, Summer v. Teaneck, 53 N.J. 548, 552 (1969). Cf. Marie's Launderette v. Newark, 35 N.J. Super. 94 (App. Div. 1955). We note that in upholding the ordinance here involved the County court relied only on N.J.S.A. 40:48-2.
Thus, the issue resolves itself into whether the regulation in question is a reasonable exercise of the general police power of the municipality. We are not aware of any decision in this State which deals with the requirement of an attendant at a laundromat. Those decisions of other jurisdictions which have spoken to this particular question are split as to the validity of such a regulation and, if nothing else, serve as a reminder that cases of this nature turn on their particular facts. Compare Gibbons v. City of Chicago, 34 Ill.2d 102, 214 N.E.2d 740 (Sup. Ct. 1966), cert. den. 385 U.S. 829, 87 S.Ct. 63, 17 L.Ed. 2d 65 (1966); Anton's of Reading, Inc. v. Town of Reading, 346 Mass. 575, 195 N.E.2d 80 (Sup. Jud. Ct. 1964); Schacht v. City of New York, 30 Misc.2d 77, 219 N.Y.S.2d 53 (Sup. Ct. 1961), mod. 14 App. Div.2d 526, 217 N.Y.S.2d 278 (App. Div. 1961), 40 Misc.2d 303, 243 N.Y.S.2d 272 (Sup. Ct. 1963), aff'd 281 N.Y.S.2d 973 (App. Div. 1967), upholding ordinances which, among other provisions, required the presence of an attendant at a laundromat, with Heard v. Bolton, 107 Ga. App. 863, 131 S.E.2d 835 (App. Ct. 1963); Van Sciver v. Zoning Bd. of Adjustment of Philadelphia, 396 Pa. 646, 152 A.2d 717 (Sup. Ct. 1959); Friendlyville Enterprises, Inc. v. Village of Amityville, 217 N.Y.S.2d 695 (Sup. Ct. 1961), all of which disapproved the requirement of an attendant at a laundromat.
In New Jersey municipal ordinances passed pursuant to the police power are vested with a strong presumption of validity. N.J. Const. (1947), Art. IV, § VII, par. 11; Moyant v. Paramus, 30 N.J. 528, 534 (1959); Elizabeth v. Sullivan, 100 N.J. Super. 51, 55 (Cty. Ct. 1968); Berkeley *80 Tp. Bd. of Health v. Johnson, 73 N.J. Super. 384, 391-392 (App. Div. 1962). It is the burden of those who challenge an ordinance to show by clear evidence aliunde or by a showing on its face or in the light of facts of which judicial notice can be taken, that there is a transgression of constitutional limitation or the bounds of reason. Moyant, supra 30 N.J. at 535; Elizabeth, supra 100 N.J. Super. at 55-56; Clifton v. Weber, 84 N.J. Super. 333, 339 (App. Div. 1964), aff'd 44 N.J. 266 (1965).
Although the factual background which motivated plaintiff municipality to pass this ordinance was not developed at trial, a reading of all the regulations shows that they are intended to preserve the safety and welfare of those who use laundromats. Nothing in the record bespeaks of arbitrary or unreasonable action on the part of the municipality. Where, as here, the subject is comprehended in the police power, debatable questions as to reasonableness are not for the courts but for the legislative body which is entitled to form its own judgment. Reingold v. Harper, 6 N.J. 182, 194 (1951); Reisdorf v. Mountainside, 114 N.J. Super. 562, 570 (Law Div. 1971).
Defendant's proofs fall far short of those which are necessary to overcome the ordinance's presumptive validity. He has done little more than assert the unreasonableness of the ordinance and the added expense of operation it entails. That, at the present moment, defendant's business is the only one reached by the regulation is not a basis for invalidating the ordinance. The ordinance speaks to all laundromats and is to be tested not by what is being done but by what may be done under the law. 6 McQuillin Mun. Corp. op. cit., § 20.09 at 24; see also Gilman v. Newark, 73 N.J. Super. 562, 572-578 (Law Div. 1962). So, too, the validity of an ordinance is not vitiated because it incidentally places a greater economic burden on those subject to it. Gilman v. Newark, supra at 585.
It is defendant's further contention that paragraph (h), which requires that self-service launderies have either an *81 attendant or mandatory closing between midnight and 7 A.M., is unconstitutional in that both the United States and New Jersey Constitutions protect the rights of its citizens to engage in lawful businesses unhindered by unnecessary governmental regulations which work a taking of property without due process of law; that governments may not act in an unreasonable, arbitrary or capricious manner and that there must exist a substantial relationship between the regulations imposed and the public interest to be advanced and that here no such nexus exists.
In Fasino v. Montvale Mayor and Council, 122 N.J. Super. 304 (Law Div. 1973), aff'd o.b. 129 N.J. Super. 461 (App. Div. 1973), Judge (now Justice) Pashman struck down an ordinance which mandated the closing of all retail businesses (except those selling food and beverages exclusively for on-the-premises consumption) between 11 P.M. and 6:30 A.M. on the grounds that the ordinance bore no substantial relationship to the public health, safety, morals, or general welfare and therefore violated the Due Process clause of the Fourteenth Amendment of the United States Constitution and constituted an unwarranted intrusion on the basic right of private property. Reviewing the cases which have upheld ordinances restricting hours of business operation, he found that specific businesses that were so regulated presented a clear danger to, or revealed direct and specific relation to, the public health or safety, or both.
Commenting on Gibbons v. Chicago, supra, Judge Pashman noted the rationale of the Illinois Supreme Court in upholding an ordinance requirement that an attendant be present in every self-service, coin-operated laundry establishment between the hours of 6 P.M. and 11:30 P.M. and the closing thereof between the hours of 11:30 P.M. and 6:30 A.M.  the inherent danger of fire from overloaded dryers or washers during the late night and early morning hours when such places were usually left unattended, the danger of spread of contagious diseases if the machines were not operating at a high enough temperature, the risk of injury to *82 unsupervised customers, and the high incidence of crime at such unattended establishments. Id. 122 N.J. Super. 304 at 312.
Here, the trial judge found that, unlike the situation in Fasino, there was a real relationship between the regulations and the public welfare; that
* * * although considerations relating to fire and health hazards would appear * * * to be present at all hours, the crime perils undoubtedly increase with darkness. These times of high crime incidence should render reasonable an ordinance which forbids an unattended place where a lone customer of either sex would be easy prey for the night predator. Likewise, it is not unreasonable for an ordinance to seek to eliminate a potential night-time open-house for delinquents, juvenile or otherwise.
We agree.
The judgment of the County Court is affirmed.
NOTES
[1] This statute permits a municipality to license and regulate a variety of specific activities, including under subsection (g):

Lumber and coal yards, stores for the sale of meats, groceries and provisions, dry goods and merchandise, and goods and chattels of every kind, and all other kinds of business conducted in the municipality other than herein mentioned, and the places and premises in or at which the business is conducted and carried on; street stands for the sale or distribution of newspapers, magazines, periodicals, books, and goods and merchandise or other articles; * * *.