STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
DENNIS J. HART, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted June 29, 1987—Decided July 13, 1987.

Before Judges DREIER and LONG.

*Louis F. Hornstine,* Attorney for appellant, (*Mr. Hornstine,* on the brief).

*Karavan & Thornton,* Attorneys for respondent City of Wildwood (*Kevin J. Thornton,* on the brief).

The opinion of the court was delivered by

DREIER, J.A.D.

Defendant has appealed from a Law Division conviction for a parking violation for which the judge imposed a $10 fine and $5 costs. The facts are simple and raise a single question, the interpretation of the term "12 p.m."

Defendant had parked in a space controlled by a parking meter which displayed a legend showing the hours of the meter's operation to be from 8 a.m. until 12 p.m. The underlying municipal ordinance regulated parking from "8:00 a.m. to 12:00 midnight," but the sign which was the only notice of the effective hours of metered parking, did not use the language of the ordinance. Defendant contended in the Wildwood Munici-

pal Court and the Law Division, and reiterates before us, that when the overtime parking ticket was given at 1:35 p.m., it was after the posted hours of the meter and, therefore, he should be exonerated. He noted at trial that in the local post office in Wildwood the Saturday hours were posted as 10:00 a.m. to "noon (12 o'clock *p.m.*)" [Emphasis added]. He further noted that in a manual he received accompanying a video recorder, midnight was set at 12 o'clock *a.m.* These examples were given to the trial court to indicate at least the ambiguity created by the use of the terms 12 o'clock a.m. or 12 o'clock p.m. rather than the more precise terms of noon and midnight. From this ambiguity, defendant argued that since quasi-criminal and penal statutes are to be strictly construed, the signs in question should be found at least ambiguous and defendant's conviction reversed.

The trial judge in a letter opinion determined that 12 p.m. meant only midnight and "the fact that people have a misconception of a fact or an error in their understanding of a concept does not change the fact nor alter the concept." He determined as a matter of law that "Twelve Midnight is 12 hours after Noon (post *meridiem*)." He also stated, however, that "Twelve midnight is also 12 hours before Noon (ante *meridiem*)." But after demonstrating this ambiguity of 12 midnight in terms of a.m. or p.m., he stated, *ipse dixit:* "Therefore, 12 p.m. is 12 midnight." This reasoning is based upon a fallacy. Although it makes no difference to after noon references or to midnight, the terms *ante meridiem* and *post meridiem* do not generally refer to the number of hours before or after noon (the meridian), but rather the time occurring in the 12 hour period before or after noon. Thus, although three p.m. is also three hours after noon, three a.m. is not three hours before noon, but rather nine hours before noon; it is the third hour in the 12 hours *ante meridiem.*

At oral argument in the Law Division the trial judge made it clear that he accepted the State's argument that in a shore

community it would be illogical to suppose that the municipality intended to regulate parking only in the morning, since revenues were derived from the meters throughout the entire day especially in the summer periods. In his opinion the judge quoted *Schierstead v. Brigantine,* 29 *N.J.* 220, 230 (1959):

... statutes are to be read sensibly rather than literally and the controlling legislative intent is to be presumed as 'consonant to reason and good discretion.'

He further determined that "the same logic and construction should apply to legal notices such as the one here in dispute." Although we agree with this legal principle, we cannot agree with the judge's application of it to this case. If it were proper to speculate upon what a motorist would discern as to the municipality's motives in setting the hours of parking regulation, it would not be unreasonable to suppose that the City of Wildwood determined that to attract additional downtown patronage, it would not charge for parking in the afternoon, a time when most people would be at the beaches.

The issue, therefore, is whether the notice given to the public was clear, since any ambiguity should be resolved to avoid unfairness and in favor of defendant. The posted notice should be subject to the same rules of construction as any underlying statute or ordinance. "Statutes rendering behavior criminal ... must do so in terms that cannot arguably be misunderstood...." *State v. Hodge,* 95 *N.J.* 369, 374 (1984). Also, as noted in *State v. Leonardo,* 109 *N.J. Super.* 442, 448 (App.Div. 1970):

A penal statute must be strictly construed and will not be held to create a liability not clearly fixed by the words of enactment. ... Before one can be punished under such a statute, the condemned act must be plainly and unmistakably within the statute. ... Any doubt as to the meaning thereof should be resolved in favor of a defendant.

A perusal of reported New Jersey decisions over the last 25 years using the terms "12 a.m. or 12 p.m." shows the following: Contrary to the usage directed by the trial judge, "12 a.m." has been noted as referring to midnight in an ordinance quoted in *Southland Corp. v. Edison Tp.,* 217 *N.J.Super.* 158, 160 (Law Div.1986) and in the text of the opinion in *Self v. Board of*

*Review,* 91 *N.J.* 453, 455 (1982). Also, "12 p.m." has been referred to as noon in *Wunschel v. Jersey City,* 96 *N.J.* 651, 655 (1984); in a municipal resolution quoted in *Van Allen v. Bd. of Com'rs of Bass River Tp.,* 197 *N.J.Super.* 443, 446 (Law Div.1984), aff'd in part, rev'd in part 211 *N.J.Super.* 407 (App. Div.1986), and in a search warrant affidavit, *State v. Ebron,* 113 *N.J.Super.* 152, 154 (App.Div.1971), rev'd 61 *N.J.* 207 (1972). In support of the Law Division interpretation, "12 p.m." was noted as midnight in an ordinance quoted in *Little Falls Tp. v. Husni,* 139 *N.J.Super.* 74, 76 (App.Div.1976); in a contract in *Shell Oil Co. v. Marinello,* 120 *N.J.Super.* 357, 366 (Law Div.1972), modified 63 *N.J.* 402 (1973), *cert.* den. 415 *U.S.* 920, 94 *S.Ct.* 1421, 39 *L.Ed.*2d 475 (1974); in a filing notation described in *U.S. Steel Corp. v. Director Div. of Taxation,* 38 *N.J.* 533, 537 (1962), and also in the text of an opinion, *State v. Sikora,* 44 *N.J.* 453, 458 (1965). Twelve a.m. was the notation for noon in *Township Committee of So. Harrison Tp. v. Gloucester Cty Freeholder Bd.,* 213 *N.J.Super.* 179, 193 (Law Div.1985), rev'd 210 *N.J.Super.* 370 (App.Div.1986). Although in none of these cases was there a dispute concerning the terms and they are not cited for their holdings, it is clear that in the courts there has been no consistent usage of the terms.[1] We are thus loath to apply an absolute definition of the term 12 p.m. in a quasi-criminal context, especially where the municipality chose not to follow its own ordinance and use the word "midnight," but rather employed an ambiguous term in giving notice to the public.

Accordingly, defendant's conviction for the parking violation is reversed and this matter is remanded to the Law Division with the direction to vacate the conviction and dismiss the summons.

[1]We take judicial notice under *Evid. R.* 9(2)(e) that the Time Service Division of the U.S. Naval Observatory in an official statement dated January 1, 1985 entitled "Designation of Noon and Midnight" recommends that the abbreviations 12 a.m. and 12 p.m. not be used because they cause confusion. Instead, the Naval Observatory suggests the usage of the complete words "noon" and "midnight," of times such as 12:01 a.m. or 11:59 p.m. or of the 2400 system.